IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD D. PARKELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 15-718-SLR |
| | ) |
| DAVID PIERCE, et al., | ) |
| | ) |
| Defendants. | ) |

Donald D. Parkell, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

**MEMORANDUM OPINION**

Dated: March 4, 2016
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Donald D. Parkell ("plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, proceeds pro se and has been granted in forma pauperis status. He filed this complaint pursuant to 42 U.S.C. § 1983[1] and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq. (D.I. 3) The court screened the original complaint and gave plaintiff leave to amend. An amended complaint was filed on December 22, 2015. (D.I. 17)

## II. STANDARD OF REVIEW

A federal court may properly dismiss an action sua sponte under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); see also 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because plaintiff proceeds pro se, his pleading is liberally construed and his

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544

2

(2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, __U.S.__, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotations omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

Plaintiff arrived at the VCC on January 31, 2014. Since his arrival he has been housed in buildings 21 and 23, as well as B-building and building 18. The amended complaint does not provide the dates when plaintiff was housed in building 23 or the exact dates when he was housed in building 21, but it appears from the allegations that plaintiff's level one classification coincides with his housing in building 21. Plaintiff was housed in building 21 from January 31, 2014 until approximately July 2014. Plaintiff was housed in B-building for two weeks in June 2015. In addition, for a five-day period

from June 23 to June 29, 2015, plaintiff received a sanction of disciplinary isolation in building 18 as a result of an incident that occurred in B-building. Once plaintiff served the five day sanction in isolation, he returned to building 21 where he remained housed as of December 2015.

The amended complaint raises the following claims: due process violations; violations of the right to be free from cruel and unusual punishment, legal documents/ privilege violations; violations of the right to freely exercise religion; and excessive force. The allegations in the amended complaint are very similar to those raised in the original complaint. The court will address each claim in turn.

### A. Due Process, ¶¶ 74-75

The amended complaint alleges that defendant hearing officer John Doe ("Doe") violated plaintiff's right to due process on June 24, 2015, during disciplinary proceedings when plaintiff did not receive 24-hours notice of the charges against him, he was denied the right to call witnesses, and he was threatened with twenty to thirty extra days in isolated confinement if he tried to confront his accuser. Plaintiff received a sanction of five days in isolation. After serving the five days, plaintiff returned to building 21. (D.I. 17, ¶ 74)

It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Rather, due process prohibits the deprivation of a prisoner's liberty interest at a disciplinary hearing unless the prisoner is given: (1) an impartial decision-making body; (2) twenty-four hour notice of the charges; (3) an opportunity to call witnesses and present documentary evidence;

4

(4) assistance from a representative; and (5) a written decision explaining the evidence relied upon. *Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). In addition, the disciplinary decision must be supported by at least "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

Procedural due process rights are triggered by a deprivation of a legally cognizable liberty interest. A deprivation of a legally cognizable liberty interest occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Generally, disciplinary restraints on an inmate's freedom in prison in response to a wide range of institutional infractions, or an inmate's transfer to less amenable quarters, are deemed to fall "within the expected parameters of the sentence imposed by a court of law." *Id.* at 485. Hence, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Sandin*, 515 U.S. at 480 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). However, if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that factor should be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection. *Griffin v. Vaughn*, 112 F.3d 703, 708-09 (3d Cir. 1997) (disciplinary segregation of state prisoner for 15 months did not impose atypical and significant hardship on prisoner, and thus, did not implicate the due process clause).

Plaintiff was housed in isolation for five days, an amount of time that does not implicate a protected liberty interest. In addition, to the extent he asserts a due process claim because of his housing assignment in building 21, the time he has spent there (approximately one year) also does not implicate a protected liberty interest. Plaintiff, therefore, lacks the requisite liberty interest to implicate a due process violation.

The amended complaint further alleges that defendant Ronald Frederick ("Frederick") violated plaintiff's right to due process when Frederick sprayed plaintiff with Vexor (i.e., pepper spray) and sent plaintiff to isolation for asking if he had received any legal mail. Next, the amended complaint alleges that Frederick lied on a misconduct report to cover-up his abuse of authority which, in turn, violated plaintiff's right to a fair hearing and an opportunity to mount a defense, all of which caused plaintiff's confinement in isolation and in building 21.

To the extent plaintiff challenges the sanctions imposed as a result of an allegedly fraudulent misconduct report, the allegations fall short of stating a due process violation. *See Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002) (alleged fraudulent misconduct report and related sanction of disciplinary confinement for seven months did not violate a protected liberty interest where there was no evidence that proceedings were instituted solely in retaliation for the exercise of a constitutional right). The amended complaint does not state a claim for retaliation and, as discussed above, the sanctions imposed upon plaintiff do not rise to the level of an atypical or significant hardship.

Accordingly, the court will dismiss the due process claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

## B. Cruel and Unusual Punishment, ¶¶ 76-78

The amended complaint alleges that defendant Warden David Pierce ("Pierce") violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by enacting or maintaining policies, practices, or customs. In essence, plaintiff sues Pierce on a supervisory liability theory. Supervisory liability may attach if a supervisor implemented deficient policies and was deliberately indifferent to the resulting risk, or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. *See Sample v. Diecks*, 885 F.2d 1099, 1117-118 (3d Cir. 1989). Plaintiff alleges that Pierce's policies:

> **(1)** prevent plaintiff from shaving his head, face, and body hair for basic hygiene for religious purity and mental well-being (building 21);
> **(2)** house plaintiff in a cell without assessing the compatibility or mental health condition of his cell-mate (building 21);
> **(3)** force plaintiff to live in a cell 23 hours per day with a toilet that locks itself out if it is flushed twice in a five-minute span, placing plaintiff at the mercy of his cell-mate who can subject plaintiff to one hour of foul, putrid stench at will (building 21);
> **(4)** require plaintiff to receive haircuts by an unsupervised inmate who has numerous weapons readily available, while plaintiff is locked in a small room handcuffed behind his back, unable to defend himself from a potential attack (building 21);
> **(5)** prevent congregational worship and/or one-on-one instruction (building 21);
> **(6)** prevent plaintiff from maintaining the privacy of his legal filings (building 21);
> **(7)** subject plaintiff to three strip searches per day (building 18);
> **(8)** shackle, cuff, and chain plaintiff during legal visits and prevent him from taking a bathroom break because taking a break may jeopardize continuation of the visit and cause it to end (building 21);
> **(9)** house plaintiff on a tier, and in a cell, with other inmates who are permitted to purchase food and over-the-counter medications, when plaintiff does not have those privileges (building 21);
> **(10)** prevent plaintiff from purchasing over-the counter medications that are available for purchase in the commissary (building 21);

**(11)** allow the arbitrary taking of plaintiff's evidence, newspaper clippings, and religious texts when plaintiff's belongings are stored in the property room; and
**(12)** require the presence of correctional officers in the immediate listening area during one-on-one mental health evaluations;

The amended complaint also alleges that defendant support services and treatment supervisor Ronald Hosterman ("Hosterman") violated plaintiff's Eighth Amendment rights by: (1) enacting or maintaining the "quality of life level system"[2] that prevents plaintiff from receiving any over-the-counter medications or food items while on level one, but requires him to be housed with inmates who can purchase such items, and (2) housed plaintiff with another man without any risk assessment or compatibility test.

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware

---

[2]Plaintiff explains this is a sliding scale of opportunity for privileges. Inmates on level one are not permitted to purchase over-the-counter medication. Plaintiff complains that inmates on levels two through four exploit inmates on level one by offering to sell level one inmates medication at two to three times the actual cost.

8

of the excessive risk to inmate safety. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

Although the conditions complained of by plaintiff may be harsher in building 21 than in other buildings, they do not constitute a denial of "the minimal civilized measures of life's necessities." *See, e.g., Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995) (holding no Eighth Amendment violation where prisoner was placed in a strip cell without clothes, the water in the cell was turned off and the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld). In addition, there are no allegations that plaintiff was denied a basic human need. *See e.g., Jones v. Secretary Penn. Dep't of Corr.*, 589 F. App'x 591 (3d Cir. 2014) (unpublished). Instead, plaintiff essentially complains of policies applied to inmates housed in building 21, none of which violated his constitutional rights. Prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 527 (1979). Plaintiff does not allege sufficiently serious conditions that caused an excessive risk to his health or safety.

Finally, this count contains one claim based upon strip searches when plaintiff was housed in building 18, searches plaintiff claims violated his right to be free from cruel and unusual punishment. Plaintiff alleges that during the five days he was held in isolation, he was strip searched three times per day, every single day. (D.I. 17, ¶ 39)

A prisoner's challenge to a strip search may be cognizable under 42 U.S.C. § 1983 through the Fourth or Eighth Amendments. To raise a Fourth Amendment claim, the prisoner must allege that the strip search was unreasonable. *See Payton v.*

9

*Vaughn*, 798 F. Supp. 258, 261-62 (E.D. Pa.1992). Where a prisoner alleges that the strip search was conducted in a physically abusive manner, the Eighth Amendment applies. *See Jordan v. Cicchi*, 428 F. App'x 195, 199-200 (3d Cir. 2011) (unpublished) (explaining that an excessive force claim arising from a strip search may proceed under either the Fourth Amendment or the Eighth Amendment, but the latter is "the primary source of protection after an individual's conviction").

To the extent plaintiff challenges the strip searches under the Eighth Amendment, the claim fails. There are no allegations of excessive force or any injury resulting from a strip search. To the extent plaintiff challenges the strip searches as unreasonable under the Fourth Amendment, the claim also fails given the paucity of the allegations and their conclusory nature. Notably, prison officials may conduct visual body cavity searches whenever an inmate enters and exits his cell in the restricted housing unit, if performed in a reasonable manner. *Millhouse v. Arbasak*, 373 F. App'x 135, 137 (3d Cir. 2010) (unpublished) (citing *Bell*, 441 U.S. at 559–60). Plaintiff's strip search claim does not rise to the level of a cognizable constitutional violation under § 1983 and this claim will be dismissed.

Accordingly, the court will dismiss the cruel and unusual punishment claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### C. Legal Documents/Privilege, ¶ 79

Plaintiff alleges that defendants Mike Little ("Little") and Maria Lyons ("Lyons") violated his right to privacy[3] and privilege of his legal documents because they:

---

[3]While a prisoner has a right to privacy in his legal mail, it appears the papers to which plaintiff refers are documents he submitted for photocopying. The amended

(1) require that plaintiff send legal documents he intends to file through correctional officers and the documents are stored in an unsecured sack in a room where staff members have access to the documents that are then delivered to the law library for photocopying; (2) read plaintiff's legal documents (while unsupervised) to determine whether the documents should be photocopied; (3) removed exhibits from plaintiff's filing in another case which caused him to file an unsupported motion; and (4) require plaintiff to provide court order deadlines to receive emergency paper supplies and then refuse to provide supplies even when provided with the deadline.

Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (holding that prisons must give inmates access to law libraries or direct legal assistance). "Many courts have found a cause of action for violation of the right of access stated where it was alleged that prison officials confiscated and/or destroyed legal materials." *Zilich v. Lucht*, 981 F.2d 694, 695 (3d Cir. 1992) (citations omitted).

However, a violation of the First Amendment right of access to the courts is only established where a litigant shows that he was actually injured by the alleged denial of access or interference. The actual injury requirement is a constitutional prerequisite to suit. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out

---

complaint speculates that legal documents could be seen by prison officials but does not identify what legal papers were reviewed or the nature and extent any alleged examination. The facts as pled do not rise to the level of a constitutional violation.

11

of court"). An actual injury is shown only where a nonfrivolous, arguable claim is lost. *Christopher,* 536 U.S. at 415.

Plaintiff has not identified a nonfrivolous, arguable underlying claim. Nor does the amended complaint show that the actions or inactions of Little or Lyons caused plaintiff injury sufficient to sustain his access to the courts claim. For these reasons, the court will dismiss the claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### D. Religion, ¶ 80

Plaintiff alleges that defendant chaplain Dr. Gus Christo ("Dr. Christo") violated his right to practice his religion under the First Amendment and RLUIPA because he: (1) did not allow plaintiff to be recognized as Jewish; (2) does not allow communal services or worship in building 21; and (3) refuses to provide any religious instruction or assistance in building 21. Plaintiff alleges that the Delaware Department of Correction will not allow him to practice Judaism and that he is well-known by other inmates as a Jewish faith adherent.

To state a claim under RLUIPA, an institutionalized person must allege a "substantial burden on [his] religious exercise." 42 U.S.C. § 2000cc-1. Under RLUIPA, "[a] plaintiff-inmate bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion." *Washington v. Klem,* 497 F.3d 272, 278 (3d Cir. 2007).[4] In addition, when a prisoner claims that his

---

[4] "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt v. Hobbs,* __U.S.__, 135 S.Ct. 853, 864 (2015) (internal quotation marks and

12

First Amendment right to exercise religion has been curtailed, a court must determine as a threshold matter whether the prisoner has alleged a belief that is "both sincerely held and religious in nature." *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000).

Liberally construing the allegations, as the court must, plaintiff alleges what appear to be cognizable and non-frivolous religion claims under RLUIPA and the First Amendment.

### E. Excessive Force, ¶¶ 81-82

Plaintiff realleges his excessive force claim against defendant Ronald Frederick ("Frederick"). The court previously determined that plaintiff has stated a cognizable excessive force claim against Frederick. (*See* D.I. 14, 15)

## IV. CONCLUSION

For the above reasons, the court will: (1) allow plaintiff to proceed on the RLUIPA and First Amendment religions claims against Cristo and the excessive force claim against Frederick; and (2) dismiss the remaining defendants and claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915(A)(b)(1). Plaintiff was given an opportunity to cure his pleading defects but, with the exception of the religion claims, he failed to do so. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (The court may curtail or deny a request for leave to amend where there is "repeated failure to cure deficiencies by amendments previously allowed" and there would be "futility of amendment."). A separate order shall issue.

---

alterations omitted).

13