IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DONALD D. PARKELL,          :
                            :
        Plaintiff,          :
                            :
    v.                      : Civ. No. 15-718-LPS
                            :
RONALD FREDERICK, et al.,   :
                            :
        Defendants.         :

Donald D. Parkell, James T. Vaughn Center, Smyrna, Delaware, Pro Se Plaintiff.

Devera Breeding Scott, Deputy Attorney General Deputy, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

March 19, 2018
Wilmington, Delaware

STARK, U.S. District Judge:

# I. INTRODUCTION

Plaintiff Donald Parkell ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983. He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 8, 11) He filed this action pursuant to 42 U.S.C. § 1983[1] and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* (D.I. 3) The amended complaint, filed on December 22, 2015, is the operative pleading. (D.I. 17) The Court has jurisdiction by reason of a federal question pursuant to 28 U.S.C. § 1331. Presently before the Court are Defendants' motion for summary judgment, Plaintiff's motion to compel, and Plaintiff's request for counsel. (D.I. 30, 39, 40) The motion for summary judgment is unopposed, Plaintiff having been given one final extension of time to respond (until September 7, 2017), and failing to do so. (*See* D.I. 35)

# II. BACKGROUND

This matter proceeds on two claims: an excessive force claim under the Eighth Amendment and religion claims under the First Amendment and RLUIPA. (*See* D.I. 18, 19) The amended complaint alleges that on June 23, 2015, Plaintiff asked Defendant Sergeant Ronald Frederick ("Frederick") a question about legal mail, to which Frederick responded by yelling at Plaintiff and, in a fit of rage, spraying Plaintiff with Vexor (a commercial pepper spray) all over Plaintiff's face, chest, and arms, until Plaintiff was completely covered in the chemical. Plaintiff was then handcuffed, seen by a nurse, taken to a holding cell, and transferred to building 18. The amended complaint also alleges that Defendant Chaplain Dr. Gus Christo ("Christo") violated Plaintiff's right to practice his

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

1

religion under the First Amendment and RLUIPA because he: (1) did not allow Plaintiff to be recognized as Jewish; (2) does not allow communal services or worship in building 21; and (3) refuses to provide any religious instruction or assistance in building 21. Plaintiff alleges that the Delaware Department of Correction ("DOC") will not allow him to practice Judaism and that he is well-known by other inmates as a Jewish faith adherent.

**Excessive Force Claim.** Plaintiff testified that he brought suit against Frederick because Frederick abused his authority and sprayed Plaintiff with mace "just because he wanted to." (D.I. 31-1 at D9) On June 23, 2015, Plaintiff was housed in B-Building (a medium security housing unit). Frederick was sitting in the sergeant's office, which is very small and has one entrance. (*Id.* at D15, D56-62) According to Frederick, two other officers were in the office behind the door and Frederick. (*Id.* at D56-62) As Plaintiff walked past the sergeant's office on his way to the medication call, he stopped, entered the office, and asked Frederick if he had any legal mail. (*Id.* at D13-16, D56-62) Frederick told Plaintiff to go get his medication. (*Id.* at D14) Plaintiff testified that when he asked Frederick for his mail, Frederick "just snapped," "got very angry," and cursed at Plaintiff. (*Id.*) According to Plaintiff, after he told Frederick there was no need to cuss at him, Frederick pulled out his mace and sprayed Plaintiff. (*Id.* at D16) Plaintiff testified that he told Frederick not to spray him, but he maced him anyway. (*Id.* at D18) Plaintiff testified that Frederick emptied the can on him. (*Id.* at D19) Plaintiff testified that in no way was he resisting at all. (*Id.* at D.I. 21)

According to Frederick, he told Plaintiff that it was not time for mail call, and he ordered Plaintiff to continue on to the medication pass room for his medication. (*Id.* at D56-62) Plaintiff did not follow Frederick's order and, according to Frederick, began acting strangely and aggressively, balling his fists and bouncing around as if he wanted to box Frederick. (*Id.*) Also according to Frederick, when Plaintiff did not follow one or two additional orders to proceed to the medication

pass room, Frederick stood up and ordered Plaintiff to return to the tier and lock in his cell. (*Id.*) According to Frederick, it was at the point, when Plaintiff failed to obey that order and maintained a fighting posture, that he sprayed Plaintiff with Vexor. (*Id.*) Frederick denies cursing, shouting, or rushing at Plaintiff and denies that Plaintiff told Frederick not to spray him. (*Id.*)

Frederick handcuffed Plaintiff and placed him in a closet that had a screened window until other officers arrived to escort Plaintiff to the infirmary. (*Id.* at D18-19, D56-62) Plaintiff testified that he had no problems after June 23, 2015, as a result of the Vexor exposure, just slight burning of the skin. (*Id.* at D27)

Plaintiff was disciplined for the June 23, 2015 incident. (*Id.*) He was charged with demonstrating a strike, failure to obey an order, and disorderly and threatening behavior, found guilty, and sanctioned. (*Id.* at D28, D61) Plaintiff seeks compensatory and punitive damages from Frederick. (*Id.* at D45)

**Religion Claims**. Plaintiff has identified as Jewish since 2012. (*Id.* at D32) In August 2015, Christo was hired by the DOC as a chaplain assigned at the VCC. (D.I. 31-1 at D63-64) Christo was trained at another location and began working at the VCC in November 2015. (*Id.*) Christo was added as a defendant in the amended complaint, filed in December 2015. (D.I. 17) As the VCC chaplain, Christo is responsible for planning and coordinating inmate religious services. (*Id.* at D63)

According to Christo, during the relevant time-frame, he had no contact in person, in writing, or otherwise with Plaintiff. (D.I. 31-1 at D63-64) According to Christo, he was not personally involved in making any decisions regarding Plaintiff's requests for religious services and instruction, or his request to be identified as Jewish. (*Id.*) Plaintiff testified that he named Christo as

3

a defendant because Christo was the chaplain and Plaintiff wanted this case to proceed as a class action.[1] (*Id.* at D8)

During his deposition, Plaintiff testified that he had never met Christo but had corresponded with him. (*Id.*) Plaintiff testified that Christo prevented him from practicing his religion because there are no communal services (such as a Sabbath service) or religious instruction (such as a Hebrew course), and he is looking for some kind of religious experience to pursue. (*Id.* at D39-40) He believes that because Christo is the head of all religious services, Christo was the decisionmaker on the issue of communal services. (*Id.* at D39) Plaintiff testified that he wrote to Christo about communal services and was told "they just don't do that," while Christo states that he had no contact with Plaintiff in writing, in person, or by any other means. (*Id.* at D41, D64) Since filing the complaint, Plaintiff has had no communication with Christo. (*Id.* at D42)

**Exhaustion.** Plaintiff testified that he filed one grievance regarding the June 23, 2015 incident with Frederick, and was told that it was not grievable. (*Id.* at D45) He testified that he filed grievances regarding his claims with Christo and the results were "nongrievable." (*Id.* at D46-47) The affidavit of Cpl. Matthew Dutton ("Dutton") states that he searched the grievances submitted by Plaintiff from June 23, 2015 to December 22, 2015 in connection with this lawsuit. (*Id.* at D65) During Dutton's search he found that Plaintiff had filed many grievances, but did not find any grievances in connection with the June 23, 2015 incident, grievances related to Plaintiff's religion, or grievances concerning Christo. (*Id.* at D66)

### III. MOTION TO COMPEL

Plaintiff moves to compel Defendants to respond to discovery requests. (D.I. 39) Plaintiff states that Defendants refuse to provide a list of inmates housed in B-Building on June 23, 2015;

---

[1] Plaintiff's motion for class certification was denied on October 27, 2015. (D.I. 15)

documents regarding Frederick's use of force, grievances involving Frederick; and documents regarding security cameras in B-Building.

Pursuant to Fed. R. Civ. P. 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The Court has reviewed Defendants' responses to Plaintiff's discovery requests. Defendants have either responded to the discovery requests or objected on the basis of privilege under Delaware law. The objections are sustained and, to the extent Defendants responded, the answers are adequate. Therefore, the Court will deny the motion to compel. (D.I. 39)

## IV. REQUEST FOR COUNSEL

Plaintiff seeks counsel on the grounds that Defendants have asserted privilege in discovery and refuse to produce vital documents. (D.I. 40). Plaintiff states that "without access to these documents, there is no feasible way that I do not become prejudiced unfairly." (*Id.*)

A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel. *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law.[2] *See Tabron*, 6 F.3d at 155.

---

[2] *See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) -- now

5

The Court determines that it is appropriate to encourage legal representation for Plaintiff by an attorney in this case. Therefore, his request for counsel will be granted. (D.I. 40)

## V. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standards

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be -- or, alternatively, is -- genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at

---

§ 1915(e)(1) -- does not authorize federal court to require unwilling attorney to represent indigent civil litigant, the operative word in the statute being "request").

586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

Plaintiff did not file a response to Defendants' motion, despite being given additional time to do so. Regardless, the Court will not grant the entry of summary judgment without considering the merits of Defendants' unopposed motion. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that district court should not have granted summary judgment solely on basis that motion for summary judgment "was not opposed").

### B.     Discussion

#### 1.     Eleventh Amendment Immunity

Defendants seek summary judgment based upon immunity from suit on § 1983 claims raised against them which seek monetary damages in their official capacities and on the RLUIPA claims for monetary damages against Christo in his individual and official capacities.

7

To the extent Defendants are named in their official capacities, they are immune from suit. The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). "[A] a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v. Howard*, 353 F. App'x 667, 672 (3d Cir. Nov. 16, 2009). Any § 1983 claims for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment. *See id.*

In addition, Plaintiff cannot maintain a RLUIPA action for monetary damages against Christo in his individual or official capacities. RLUIPA does not permit actions for damages against state officials in their individual capacities, *see Sharp v. Johnson*, 669 F.3d 144, 1534 (3d Cir. 2012), or in their official capacities by reason of Eleventh Amendment immunity, *see Sossamon v. Texas*, 563 U.S. 277, 293 (2011). Sovereign immunity thus bars any claims for damages against Christo. The only relief potentially available under RLUIPA is injunctive or declaratory relief, which Plaintiff indicates he seeks against Christo. *See Payne v. Doe*, 636 F. App'x 120, 125 (3d Cir. Jan. 12, 2016).

Therefore, the Court will grant Defendant's motion for summary judgment on issue of Eleventh Amendment immunity.

2. **Excessive Force**

Plaintiff claims that he was subjected to excessive force when Frederick used Vexor on him. Frederick contends that he has qualified immunity because Plaintiff failed to establish a violation of his rights under the Eighth Amendment.

The doctrine of qualified immunity shields government officials from civil liability for constitutional violations if "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). In considering whether qualified immunity attaches, courts perform a two-pronged analysis to determine: (1) "whether the facts that [the] plaintiff has alleged . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court examines whether the alleged conduct, taken in the light most favorable to Plaintiff, violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* If the allegations amount to the violation of a constitutional right, the Court proceeds to the second inquiry and determines if the right was "clearly established in the specific context of the case." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 202 (noting that officer is entitled to qualified immunity unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

As will be discussed, there remain genuine issues of material fact as to whether Frederick was deliberately indifferent to Plaintiff's risk of harm and, thus, violated Plaintiff's constitutional rights. When comparing Plaintiff's deposition testimony to Defendant's affidavit and the incident report that there are disputed facts surrounding the events of June 23, 2015 and the use of Vexor. As to the second prong, the constitutional prohibition against excessive use of force has been clearly established.

The core judicial inquiry when a prisoner alleges that prison officers used excessive force is whether force was applied in a good-faith effort to maintain or restore discipline, or instead was used maliciously and sadistically to cause harm. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010). Courts

look to several factors, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by prison officials; and (5) any efforts made to temper the severity of a forceful response. *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992); *see also Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015).

Plaintiff does not have to demonstrate serious injury, although the extent of injuries suffered is a factor in determining whether the use of force was necessary or not. *See Hudson*, 503 U.S. at 7; *see also Brooks v. Kyler*, 204 F.3d 102, 104 (3d Cir. 2000) (holding there is no fixed minimum quantum of injury that prisoner must prove he suffered through either objective or independent evidence in order to state claim for excessive force). The use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injuries. *See Hudson*, 503 U.S. at 9; *Brooks*, 204 F.3d at 106 (even de minimis use of force, if repugnant to the conscience of mankind, may be constitutionally significant).

Here, there is a genuine factual dispute as to whether Plaintiff disobeyed orders. Defendants state that Plaintiff did not respond to orders to proceed to the area to receive his medication, while Plaintiff states that when he said to Frederick there was no need to cuss at him, Frederick jumped up from his desk and sprayed him. The Court is mindful that Plaintiff was found guilty of the disciplinary charges resulting from the occurrence, but this (while perhaps probative evidence) does not eliminate the genuine factual dispute. Further, assessing the credibility of the parties will be a matter for the factfinder. Finally, Plaintiff testified that Frederick emptied the can of Vexor when he sprayed Plaintiff, that his face was burning, and that it was burning all over his body. As even a minimal use of force and a *de minimis* injury could, under the totality of circumstances, give rise to a constitutional violation, *see Hudson*, 503 U.S. at 9; *Brooks*, 204 F.3d at 106, a reasonable factfinder

drawing all reasonable inferences in Plaintiff's favor could find that Plaintiff has met his burden on the first prong of his claim.

In short, the record reveals genuine issues of material fact as to whether the force was applied in a good faith effort to maintain or restore discipline, or instead was applied maliciously and sadistically to a compliant inmate to cause harm in violation of the Eighth Amendment. Plaintiff had a clearly-established right to be free of cruel and unusual punishment. Accordingly, the Court will deny Defendants' motion for summary judgment on the issues of qualified immunity and whether the force used by Frederick violated the Eighth Amendment.

### 3. Religion: First Amendment, 42 U.S. § 1983 and RLUIPA

Plaintiff raises his religion claims under the First Amendment pursuant to 42 U.S.C. § 1983 and RLUIPA. Plaintiff, who practices Judaism, alleges that Christo prevented him from practicing his religion because there are no communal services or religious instructions. Defendants seek summary judgment on behalf of Christo on the grounds that there is no evidence he was personally involved in the alleged deprivation of Plaintiff's rights

Prisoners have a First Amendment right to practice their religion. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979). This constitutional right is limited by valid penological objectives. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) ("[L]imitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives -- including deterrence of crime, rehabilitation of prisoners, and institutional security."). When alleged religious interference stems from a prison policy, the Supreme Court has outlined four factors that are relevant in determining the reasonableness of the regulation: (1) "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest"; (2) whether the inmate has an "alternative means of exercising the right" at issue; (3) the burden that the

accommodation would impose on prison resources; and (4) "the absence of ready alternatives." *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

To state a claim under RLUIPA, an institutionalized person must allege a "substantial burden on [his] religious exercise." 42 U.S.C. § 2000cc-1. Under RLUIPA, "[a] plaintiff-inmate bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion." *Washington v. Klem*, 497 F.3d 272, 278 (3d Cir. 2007).[1]

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). To establish individual liability under § 1983 a plaintiff must show that the individual defendant was personally involved in the alleged constitutional violations. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The personal involvement requirement has been extended to RLUIPA claims. *See Lovelace v. Lee*, 472 F.3d 174, 193 (4th Cir. 2006) (dismissing RLUIPA claim against assistant warden because warden, and not assistant, issued challenged policy); *Corley v. City of New York*, 2017 WL 4357662 (S.D.N.Y. Sept. 28, 2017) (personal involvement is necessary component of a valid RLUIPA claim); *Ciempa v. Jones*, 745 F. Supp. 2d 1171, 1200 (N.D. Okla. 2010); *Goodvine v. Swiekatowski*, 594 F. Supp. 2d 1049, 1058 (W.D. Wis. 2009). Personal involvement can be established by showing that the defendant actually participated in the alleged violation or had knowledge and acquiesced in the violation. *Rode*, 845 F.2d at 1207. Plaintiff is required to prove personal involvement with "appropriate particularity." *Id.*

---

[1] "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt v. Hobbs*, ___U.S.___, 135 S.Ct. 853, 864 (2015) (internal quotation marks and alterations omitted).

12

Christo cannot be held liable in his individual capacity under § 1983 or RLUIPA because Plaintiff has not offered sufficient evidence for a reasonable jury to conclude that Christo was personally involved in the deprivation of Plaintiff's rights to practice his religion. Christo was assigned to the VCC in November 2015 and Plaintiff raised the claims against Christo on December 22, 2015, when he filed the amended complaint. As a result, the time in question is limited to a one-month period.

It is undisputed that Christo and Plaintiff never met during this time. Plaintiff testified he wrote to Christo but did not provide copies of the letters or provide a time-frame when he wrote to Christo. Moreover, Plaintiff was very clear that he only named Christo as a defendant because he was seeking class certification. Christo's affidavit states that he had no contact with Plaintiff in writing, in person, or by any other means. Even when construing the evidence in the light most favorable to Plaintiff, no reasonable jury could find that during the relevant time-frame Christo personally participated in the alleged violation of Plaintiff's right to exercise his religion under the First Amendment or RLUIPA. Therefore, the Court will grant the motion for summary judgment as to the claims raised against Christo.

### 4. Exhaustion of Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Failure to exhaust administrative remedies must be pled and proved by the defendant. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Under *Woodford v. Ngo*, 548 U.S. 81, 88 (2006), exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."

Plaintiff testified that he filed one grievance regarding the June 23, 2015 incident with Frederick, and was told that it was not grievable.[3] The Court also considers Plaintiff's April 17, 2017, filing wherein he indicates that his property was seized and destroyed due to the February 2017 uprising at VCC and that he lost nearly all of his paperwork, books, notes, exhibits, affidavits, etc. pertaining to this case. (D.I. 33) Defendants submitted Dutton's affidavit where he stated Plaintiff had filed many grievances, but none in connection with the June 23, 2015 incident.

As discussed above, it is Defendants' burden to prove Plaintiff exhausted his administrative remedies. The Court construes the evidence in the light most favorable to Plaintiff and finds Defendants have not met their burden, as a reasonable factfinder could find exhaustion. Plaintiff testified during his deposition that the grievance he submitted regarding the June 23, 2015 incident was found to be nongrievable. Defendants do not address how the VCC processes grievances that are deemed nongrievable.[4] Nor do they address the issue of Plaintiff's documents that were confiscated as a result of the February 2017 hostage incident. Accordingly, summary judgment is not appropriate, and Defendants' motion on the issue will be denied.

---

[3] The Court does not address the issue of exhaustion with regard to the claims raised against Christo given that summary judgment will be granted in Christo's favor on other grounds.

[4] It is unknown if the VCC has a record of inmate grievances that are returned as nongrievable.

14

## VI. CONCLUSION

For the above reasons, the Court will: (1) deny Defendants' motion for summary judgment as to the excessive force claim and exhaustion claims and grant the motion as to the religion claims (D.I. 30); (2) deny Plaintiff's motion to compel (D.I. 39); (3) and grant Plaintiff's request for counsel (D.I. 39, 40). The case will proceed on the excessive force claim against Frederick.

An appropriate Order will be entered.